[Cite as *State v. Brooks*, 2018-Ohio-1191.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105776**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL J. BROOKS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART AND REMANDED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-584941-A

**BEFORE:**   Laster Mays, J., Blackmon, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   March 29, 2018

-i-

**ATTORNEY FOR APPELLANT**

Brian R. McGraw
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Gregory J. Ochocki
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Michael J. Brooks ("Brooks") appeals his sentence and asks this court to remand to the trial court for resentencing. We affirm in part, and remand in part.

## I.     Procedural History

{¶2} Brooks previously appealed his convictions and sentence to this court in *State v. Brooks*, 2016-Ohio-489, 56 N.E.3d 357 (8th Dist.) ("*Brooks I*").

> In May 2014, Brooks, along with co-defendant Sylvester Cotton, was indicted in a multi-count indictment. Counts 1 and 2 charged attempted murder; Counts 3 and 4 charged felonious assault; Counts 5 and 6 charged kidnapping; Counts 7 and 8 charged aggravated robbery; and Count 9 charged aggravated burglary. Counts 1 through 9 all contained one- and three-year firearm, forfeiture of a weapon, and repeat violent offender specifications, as well as notices of prior conviction.

> Count 10 charged grand theft; Count 11 charged theft; Count 12 charged petty theft; Count 13 charged improperly handling firearms in a motor vehicle; Count 14 charged having weapons while under disability; and Count 17 charged tampering with evidence. Counts 13 and 14 contained forfeiture of a weapon specifications. Counts 15, 16, and 18 related solely to codefendant Cotton.

> After discovery, the case proceeded to a joint trial. Relative to Brooks, with the exception of the having weapons while under disability, the notices of prior conviction and repeat violent offender specifications, the case was tried to a jury. The jury found Brooks guilty of all counts and firearm specifications as charged, and the court found him guilty of having weapons while under disability and all of the notices of prior conviction and repeat violent offender specifications. The case immediately proceeded to sentencing; the trial court sentenced Brooks to an aggregate 75-year prison sentence, which included consecutive terms.

*Id*. at ¶ 2-4.

{¶3} In *Brooks I,* Brooks assigned two errors for our review: "The evidence adduced at trial was insufficient to sustain a verdict against defendant-appellant; and [t]he trial court committed prejudicial error by failing to merge the charge of kidnapping into other crimes of similar import." *Id*. at ¶ 19. This court ruled that

> Having found merit to the first assignment of error as it relates to the attempted murder under Count 2, we reverse and remand for vacation of that conviction. Further, having found merit to the first assignment of error as it relates to the aggravated burglary conviction under Count 9, we reverse and remand for vacation of that conviction and resentencing. The judgment is affirmed in all other respects.

*Id*. at ¶ 49.

{¶4} On August 10, 2016, the trial court vacated Brooks's finding of guilty on Count 2 and his conviction on Count 9. The trial court then reimposed its sentence on the remaining counts for an aggregate sentence of 61 years.

## II.    Facts

{¶5} *Brooks I* summarizes the facts of this case as follows:

> The victim, Michael Ewart, testified about the April 25, 2014 incident which gave rise to the charges. On that evening, sometime approximately between 8:30 and 8:40, Ewart returned home and parked his Orange Chevrolet Tahoe SUV on the street near his apartment building.

> Ewart testified that he normally entered and exited the apartment building through the back door because the front door was generally locked. As Ewart approached the back door, he saw Brooks come "out of the back." Two other males were with Brooks, one of whom was Cotton, and each had a gun. Cotton "came around the back" as Brooks was "coming in the hallway." At that same time, Brooks and the other male "ran out the basement." Ewart testified that he did not know any of the males prior to this incident.

Ewart testified that the trio took all the money he had in his pockets, which totaled approximately $140, and then told him to get into his vehicle because they were going to the ATM. All three men had their guns drawn as they walked to Ewart's vehicle.

When they got to the vehicle, Ewart initially got in the driver's seat, Brooks got in the front passenger seat, and Cotton and the other male were in the back seats. However, the three perpetrators decided that they did not want Ewart to drive, so they made him get in the back of the vehicle and Cotton drove. The male in the back with Ewart had his gun drawn on Ewart's chest and told him not to move or "try anything." Brooks told him he was going to die. Ewart testified that Brooks was wearing a red shirt, and that during the drive the other two perpetrators referred to Brooks as "Mike."

Cotton drove to a nearby KeyBank. Cotton had Ewart's KeyBank ATM card, which he had taken from his wallet. Cotton went to the drive-through ATM machine, and made Ewart tell him his password to use the card, and then, in three separate transactions, Cotton withdrew funds totaling $560. Surveillance video from the bank captured Cotton withdrawing the money; he was wearing gloves and apparently attempting to hide his face with his "hoodie," which was up over his head.

After Cotton withdrew the money, he drove to an alleyway on East 31st Street and Cedar Road in Cleveland. The drive took approximately 20 to 30 minutes and included highway time. Upon arriving at the alleyway, Brooks ordered Ewart to take off all his clothes and leave them in the vehicle, then to get out of the vehicle, walk down the alleyway away from the vehicle, and lay down on the ground. Ewart complied.

As Ewart was laying on the ground completely naked, he heard about eight or nine gunshots and realized he had been hit. He heard three car doors closing and the vehicle drive away. He did not know who shot him, but testified that the three perpetrators were the only people in the area at the time. The police arrived momentarily thereafter.

One of the responding officers testified that the police had been in the area when they heard "several" gunshots. They immediately responded to the area where they had heard the gunshots and found Ewart. One officer testified that Ewart was badly bleeding; he said that he had not seen bleeding like that since he had served a tour of duty in Iraq. He thought Ewart was going to die, and did what he could to save his life until emergency medical assistance arrived. Ewart told the police that he had just

been robbed and shot, and that the suspects fled in his orange Chevrolet Tahoe. Ewart was transported by ambulance to the hospital. He suffered at least two gunshot wounds and had to undergo lifesaving surgery.

Meanwhile, two of the police officers had left the scene in pursuit of Ewart's orange Tahoe. The officers saw the vehicle and, after attempting to pull it over, a high speed chase ensued. The Tahoe eventually crashed into a building located on the campus of Case Western Reserve University. The driver, Cotton, fled on foot, but was caught by an officer in pursuit. Brooks, the front seat passenger, also attempted to flee, but was immediately apprehended. The officer testified that moments prior to the crash, he saw a gun being thrown from the front passenger window. The police did not see or apprehend the third suspect. The booking photo of Brooks shows him wearing a tan, rather than red, shirt, as Ewart testified he had been wearing.

The police investigated the scene of the shooting and recovered four bullet casings in the area where Ewart had been found. The gun thrown from the Tahoe moments before the crash was also recovered. After analysis, it was determined that the four bullet casings from the shooting scene had not been fired from the gun found at the crash scene. It was further determined that a bullet recovered from Ewart's body had not been fired from that gun. No other weapons were recovered. Gunshot residue tests were performed on both Brooks and Cotton; Cotton tested positive for particles indicative of gunshot residue; Brooks testified negative. None of either defendants' clothing were tested for gunshot residue.

After his arrest, a pair of gloves was recovered from Brooks's outer garment pocket. Cash was recovered from Cotton — a total of $560, $440 of which was "pushed into" a sleeve of his sweatshirt.

Ewart identified both Brooks and Cotton in photo lineups and at trial as two of the three perpetrators who committed the crimes.

Brooks presented the testimony of his girlfriend, Antoinette Tatum ("Tatum"). Tatum testified that Brooks had been at her house in Garfield Heights on the day before the incident, April 24, 2014, and spent the night there. The following afternoon, sometime approximately between 4:30 and 5:00, Tatum drove Brooks to his mother's house, which was also in Garfield Heights, so that he could shower. Later, Brooks called Tatum to come pick him up, which she did; they then returned to her house. Tatum testified that at approximately 8:00 p.m., she drove Brooks back to his

mother's house and did not have contact with him for the rest of the evening after that.

On the advice of counsel, Brooks did not testify at trial. But at sentencing, he told the court that he was not involved in the crimes. According to Brooks, during the time that the crimes were being committed, he was walking from Garfield Heights to Cleveland — a walk he admitted would take approximately two hours — to visit a friend whom he had not seen in years and was not even sure if she still lived at the house where he was going. Brooks told the court that upon arriving at the house, his friend was not home, so he called another friend for a ride. The friend Brooks called was not available, but told Brooks he would send someone else to pick him up. Cotton picked him up, and shortly thereafter the police chased ensued. Brooks denied even knowing Cotton and also denied throwing a gun out of the vehicle's window.

*Id.* at ¶ 5-18.

**{¶6}** After the trial court sentenced Brooks to 61 years imprisonment, in accordance with the decision in *Brooks I*, Brooks filed this instant appeal raising two assignments of error for our review:

> I.    The trial court erred and/or lacked sufficient justification to impose consecutive sentences; and
>
> II.    The court's aggregate sentence of 61 years violates the appellant's Eighth Amendment right against cruel and unusual punishment.

## III.   Res Judicata

**{¶7}** Brooks's claims are barred by res judicata.

Under the doctrine of res judicata, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *State v. Patrick*, 8th Dist. Cuyahoga No. 99418, 2013-Ohio-5020, ¶ 7, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). In order to overcome the res judicata bar, the petitioner must show, through the use of extrinsic evidence, that he or she could not have appealed the original constitutional claim based on the information in the

original trial record. *State v. Combs*, 100 Ohio App.3d 90, 652 N.E.2d 205 (1st Dist.1994). Said another way, issues properly raised in a petition for postconviction relief are only those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record. *State v. Milanovich*, 42 Ohio St.2d 46, 50, 325 N.E.2d 540 (1975).

*State v. Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, ¶ 53.

{¶8} Brooks has not demonstrated that it was impossible for him to raise his issues on direct appeal. He could have raised the consecutive sentencing issue in *Brooks I*, but he did not. "It is well recognized that the doctrine of res judicata bars claims that were raised or could have been raised on direct appeal." (Citations omitted.) *State v. Roberts*, 8th Dist. Cuyahoga No. 104474, 2017- Ohio 9014, ¶ 5. Brooks was originally sentenced to 72 years of imprisonment. In his first appeal, *Brooks I,* counsel did not raise the issue of cruel and unusual punishment.

Res judicata, also known as "claim preclusion," is the doctrine under which a final judgment on the merits bars a party from bringing another lawsuit based upon the same claim. *Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 254 N.E.2d 10 (1969). Res judicata extends to bar not only claims which were actually litigated, but "every question which might have properly been litigated." *Stromberg v. Bratenahl Bd. of Edn.*, 64 Ohio St.2d 98, 413 N.E.2d 1184 (1980).

*State v. Goodwin*, 8th Dist. Cuyahoga No. 72043, 1999 Ohio App. LEXIS 2436 (May 27, 1999). Therefore, Brooks's assignment of errors are overruled.

**IV.    Consecutive Sentences**

**{¶9}** The state requested that this court remand to trial court for the limited purpose of issuing a nunc pro tunc entry to reflect the lengthy analysis of the R.C. 2929.14(C)(4) criteria that the trial court engaged in during the proceedings. In the journal entry, it just states that the trial court placed on the record R.C. 2929.14(C)(4)(b) in regards to the consecutive sentences. "In addition to making the requisite R.C. 2929.14(C)(4) findings during the sentencing hearing, the trial court is also required to incorporate its consecutive sentence findings into its sentencing journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus." *State v. Allison*, 8th Dist. Cuyahoga No. 105212, 2017-Ohio-7720, ¶ 19.

**{¶10}** This court has stated:

> In *Scaglione v. Saridakis*, 8th Dist. Cuyahoga No. 91490, 2009-Ohio-4702, this court reiterated the longstanding rule of the use of nunc pro tunc as follows: "A nunc pro tunc order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth. It is used to record that which the trial court did, but which has not been recorded. It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the effect of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors. A nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide. Its proper use is limited to what the trial court actually did decide." *Id*. at ¶ 9, quoting *State v. Greulich*, 61 Ohio App.3d 22, 24-25, 572 N.E.2d 132 (9th Dist.1988).

*Alden v. FirstEnergy Corp*., 8th Dist. Cuyahoga No. 100575, 2014-Ohio-3235, ¶ 10. Accordingly, we remand the matter to the trial court to enter a nunc pro tunc entry setting forth the applicable consecutive sentence findings made at the sentencing hearing. *Id*.

**{¶11}** Judgment is affirmed in part and remanded in part to the trial court for the limited purpose to issue a nunc pro tunc sentencing journal entry incorporating the consecutive sentence finding.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.   The case is remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, P.J., and
LARRY A. JONES, SR., J., CONCUR