[Cite as *State v. Burgos*, 2022-Ohio-3919.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                       No. 111318

    v.                                    :

ORLANDO BURGOS,                         :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** November 3, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-654101-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Eamonn McDermott, Assistant Prosecuting
Attorney, *for appellee*.

Buckeye Law Office, and P. Andrew Baker, *for appellant*.

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant Orlando Burgos appeals his convictions for aggravated burglary, burglary, and three counts of misdemeanor domestic violence, which were rendered after a bench trial. He also challenges the sentence imposed.

After a careful review of the facts and pertinent law, we affirm in part, vacate in part, and remand for further proceedings.

**Factual and Procedural History**

{¶ 2} In November 2020, appellant was indicted as follows: Count 1, aggravated burglary, a felony of the first degree, with notice of prior conviction and a repeat violent offender specification; Count 2, burglary, a felony of the second degree with notice of prior conviction and a repeat violent offender specification; and Counts 3, 4, and 5, domestic violence, misdemeanors of the first degree, with named victims I.B., L.B., and E.C., respectively.

{¶ 3} The charges stemmed from an October 2020 incident that occurred at the home of I.B. and L.B., who are appellant's elderly parents, each over 80 years of age. E.C., appellant's half-brother (L.B.'s son) was present: he was visiting from out of town.

{¶ 4} I.B., appellant's father, testified that for a period of approximately two to three years prior to the incident, he had banned appellant from their home. Against his parents' wishes, appellant was using their address for his Supplemental Security Income ("SSI") checks.

{¶ 5} The father testified that, despite his and his wife's wishes, appellant was sleeping outside in the backyard of the house at the time in question (appellant had previously been sleeping in a shed in the backyard). Appellant saw E.C. in the house, went to the front door, and knocked on it. I.B. testified that the door was closed and locked and he refused to open it for appellant. Appellant "broke down

the door." I.B. tried to stop appellant and appellant hit his hand. I.B. testified that once in the house, appellant was looking for his half-brother, E.C. E.C. left the house through the back door; appellant found him outside and "jumped on top of him and hit him."

{¶ 6} I.B. suffered swelling of the hand appellant hit. He identified state's exhibit No. 2 as a photograph of his swollen hand. I.B. also identified state's exhibit Nos. 3 through 6 which were photographs of injuries his stepson E.C. suffered. Exhibit No. 3 showed a cut on E.C.'s face, exhibit No. 4 showed a bloody injury to E.C.'s elbow, exhibit No. 5 showed blood on E.C.'s hand, and exhibit No. 6 showed blood on E.C.'s fingers. I.B. also testified about his wife's state of mind during and after the incident. He described her as "trembling," "nervous," and unable to sleep.

{¶ 7} The police were called to the scene and one of the responding officers, Frank Costanzo, testified at trial. Officer Costanzo testified that when he arrived on the scene, appellant and E.C. were in the street arguing. The officer described them both as being "animated" and that it "took a little bit to get [them] separated and calmed down." Officer Costanzo described I.B. as being upset and angry. Officer Costanzo went inside the home to speak with L.B. He described her as crying, upset, and scared. L.B. told the officer that she "got hit by a door," and appellant "pushed me so hard."

{¶ 8} After speaking with E.C., I.B., L.B., and neighbors, Officer Costanzo determined that appellant had been the aggressor. The officer photographed I.B. and E.C.'s injuries. Officer Costanzo was wearing a body camera during his

interaction with the family and the state played portions of it for the court. In the recording, I.B. and L.B. appeared distraught, scared, and angry.

{¶ 9} Appellant told Officer Costanzo that he lived at the house — he was not breaking in — he was just trying to get in his house.

{¶ 10} Appellant testified and maintained what he told Officer Costanzo — that he lived at the house. He testified that he entered the house through the unlocked back side door as he always did. When he entered the house he saw E.C., who, according to appellant, and unbeknownst to I.B. and L.B., was "on the run." He told E.C. that he had to leave. Appellant testified that he (appellant) walked outside, E.C. followed him, took a metal pole out of a fence, and hit appellant. According to appellant, exhibit No. 2, which I.B. and Officer Costanzo testified is a photograph of I.B.'s swollen hand, is actually a photograph of appellant's swollen hand, that got that way from E.C. hitting him.

{¶ 11} On this evidence, the trial court found appellant guilty on all counts, notices, and specifications as indicted. The trial court sentenced him to an aggregate six to nine years in prison under the Reagan Tokes Law. The court also imposed five years of "mandatory" postrelease control and a no-contact order.

**Assignments of Error**

    I.    The trial court erred when imposing five years of mandatory post-release control.

    II.    The trial court erred in imposing a no-contact order.

    III.    The trial court erred when it did not merge allied offenses.

IV.   The trial court erred when it imposed a sentence pursuant to the Reagan Tokes Law.

V.   The trial court erred when it convicted defendant-appellant when the convictions were not supported by sufficient evidence.

VI.   The trial court erred because the convictions were against the manifest weight of the evidence.

**Law and Analysis**

{¶ 12} There was no objection at the trial court level to the issues appellant raises in his first, second, third, and fourth assignments of error. Thus, we review the issues presented in those assignments of error for plain error.

{¶ 13} To constitute plain error, there must be (1) an error, i.e., a deviation from a legal rule; (2) that is plain or obvious; and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Mallory*, 8th Dist. Cuyahoga No. 106052, 2018-Ohio-1846, ¶ 17, quoting *State v. Long*, 53 Ohio St.2d 91, 93, 372 N.E.2d 804 (1978), paragraph two of the syllabus. The "extremely high burden" of demonstrating plain error is on the defendant. *State v. Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-1452, ¶ 20.

**Five Years of Postrelease Control not Mandatory: Plain Error**

{¶ 14} For his first assignment of error, appellant contends that the trial court erred in imposing a mandatory five-year term of postrelease control.

{¶ 15} A trial court has a statutory duty to provide notice of postrelease control at the sentencing hearing and therefore any sentence imposed without proper notice of postrelease control is contrary to law. *State v. Grimes*, 151 Ohio St.3d 19, 2017-Ohio-2927, 85 N.E.3d 700, ¶ 8, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 23 (both overruled on other grounds by *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248).

{¶ 16} A statutorily compliant imposition of postrelease control requires that the trial court advise the defendant of the following three things at the sentencing hearing and in the sentencing entry:

> (1) whether postrelease control is discretionary or mandatory, (2) the duration of the postrelease control period, and (3) a statement to the effect that the Adult Parole Authority will administer the postrelease control pursuant to R.C. 2967.28 and that any violation by the offender of the conditions of postrelease control will subject the offender to the consequences set forth in that statute.

*Grimes* at ¶ 1. "[A]ny error in the exercise of [the court's] jurisdiction in imposing postrelease control renders the court's judgment voidable, permitting the sentence to be set aside if the error [is] successfully challenged on direct appeal." *Harper* at ¶ 4.

{¶ 17} Relative to this case, R.C. 2967.28(B)(2), effective September 30, 2021, requires a period of postrelease control of "up to five years, but not less than two years" for a first-degree felony that is not a sex offense. Appellant was convicted of aggravated burglary, a non sex-offense felony of the first degree. Thus, appellant

was not subject to a mandatory five years of postrelease control as stated by the trial court.

{¶ 18} Thus, we find plain error and vacate the designated term of postrelease control. Upon remand, the trial court is required to include postrelease control as part of appellant's sentence for the statutorily required period of "up to five years, but not less than two years" pursuant to R.C. 2967.28(B)(2), and the court must provide the required advisements and incorporate those advisements into the sentencing entry.

{¶ 19} The first assignment of error is sustained.

**No-Contact Order:  Plain Error**

{¶ 20} In his second assignment of error, appellant contends that the trial court erred in imposing a no-contact order because it did not sentence him to a community-control sanction. The state concedes the error.

{¶ 21} A no-contact order is a community-control sanction. *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, 35 N.E.3d 512, ¶ 20.

> [T]he General Assembly intended prison and community-control sanctions as alternative sentences for a felony offense. Therefore, * * * when a prison term and community-control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions."

*Id*. at ¶ 31.

{¶ 22} Because the trial court sentenced appellant to a prison term, it could not also impose a community-control sanction, that is, a no-contact order.

{¶ 23} The second assignment of error is sustained.

**Merger of Allied Offenses: Plain Error as to Aggravated Burglary and Burglary Counts; No Plain Error as to Aggravated Burglary and Domestic Violence against I.B.**

{¶ 24} For his third assignment of error, appellant contends that the trial court should have merged the aggravated burglary and burglary counts and the aggravated burglary count and the count of domestic violence against I.B.

{¶ 25} R.C. 2941.25 governs allied offenses and provides that: "Where the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). The statute also provides that: "Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

{¶ 26} "'[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions * * *: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?'" *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. "'An affirmative answer to any of the above will permit separate convictions. The

conduct, the animus, and the import must all be considered.'" *Earley* at *id.*, quoting *Ruff* at *id.*

{¶ 27} When considering whether offenses are committed separately, Ohio courts has recognized that if "one offense was complete before the other offense occurred, the two offenses were committed separately for purposes of R.C. 2941.25(B), notwithstanding their proximity in time and that one was committed in order to commit the other." *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 24; *State v. Williams*, 12th Dist. Butler No. CA2018-02-030, 2018-Ohio-4261, ¶ 13; *State v. Margiotti*, 10th Dist. Franklin No. 19AP-469, 2021-Ohio-1826, ¶ 15-16; *State v. Spurrier*, 11th Dist. Lake No. 2020-L-069, 2021-Ohio-1061, ¶ 68.

{¶ 28} In other words, "when one offense is completed prior to the completion of another offense during the defendant's course of conduct, those offenses are separate acts." *State v. Mooty*, 2014-Ohio-733, 9 N.E.3d 443, ¶ 49 (2d Dist.). "To conclude otherwise would encourage those who break into buildings to steal to proceed with the theft since the offenses would merge for purposes of conviction and sentence." *Spurrier* at *id.*

{¶ 29} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26. "'[T]he defendant bears the burden of establishing his [or her] entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act.'" *State v.*

*Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18, quoting *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). An appellate court applies "a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 30} The state concedes that the aggravated burglary and burglary counts should have merged. We agree. There was one break-in; the two acts were committed together, simultaneously. They should have merged for the purpose of sentencing.

{¶ 31} Regarding merger of the aggravated burglary and domestic violence against I.B. counts, appellant contends that "[i]t is somewhat unclear from the trial testimony whether the injury suffered by the father was caused in the act of Defendant-Appellant forcing a door open or from a separate striking of the hand." According to appellant, "it appears that however it happened, it was part and parcel of the burglary and not from the outside of the residence after the burglary."

{¶ 32} I.B. testified that appellant hit his hand. He did not state that it happened while appellant was breaking down the door. Given that appellant has the "extremely high burden" of demonstrating plain error, we find no error on this record. *Chapman*, 8th Dist. Cuyahoga No. 107375, 2019-Ohio-1452, at ¶ 20.

{¶ 33} The third assignment of error is sustained in part and overruled in part.

**Sentence Properly Imposed under the Reagan Tokes Act**

{¶ 34} In his fourth assignment of error, appellant contends that the trial court erred in imposing a sentence under the Reagan Tokes Act because it is unconstitutional.

{¶ 35} Appellant did not raise a constitutional challenge to the Reagan Tokes Law and did not otherwise object to his sentences below. It is well established that "'the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court.'" *State v. Buttery*, 162 Ohio St.3d 10, 2020-Ohio-2998, 164 N.E.3d 294, ¶ 7, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986). Nevertheless, this court has discretion to review a forfeited constitutional challenge to a statute for plain error. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 377-378; *see also State v. White*, 8th Dist. Cuyahoga No. 109945, 2021-Ohio-2441, ¶ 12.

{¶ 36} Appellant does not acknowledge in his appellate brief that he failed to raise a challenge to the Reagan Tokes Law in the trial court. Further, he does not include any argument with respect to plain error regarding Reagan Tokes in his appellate brief. He therefore has not made the requisite showing to support a finding of plain error.

{¶ 37} This court has repeatedly declined to address constitutional challenges to the Reagan Tokes Law where, as here, a defendant (1) did not

challenge the constitutionality of the law below and or (2) failed to present a plain error argument on appeal. *See, e.g., State v. Nicholson*, 8th Dist. Cuyahoga No. 110522, 2022-Ohio-374, ¶ 61-62; *State v. Medina*, 8th Dist. Cuyahoga No. 109693, 2021-Ohio-1727, ¶ 23-26; *State v. White*, 8th Dist. Cuyahoga No. 109652, 2021-Ohio-126, ¶ 8-10; *State v. Jenkins*, 8th Dist. Cuyahoga No. 109323, 2021-Ohio-123, ¶ 20-23; *State v. Stone*, 8th Dist. Cuyahoga No. 109322, 2020-Ohio-5263, ¶ 6-10; *State v. Hollis*, 8th Dist. Cuyahoga No. 109092, 2020-Ohio-5258, ¶ 47-54; *State v. Dames*, 8th Dist. Cuyahoga No. 109090, 2020-Ohio-4991, ¶ 12-19. Because appellant forfeited all but plain error review and has not even constructed an argument that plain error occurred, we need not address his constitutional arguments raised for the first time on appeal.

{¶ 38} Furthermore, even if we were to consider the issue, we would find no plain error here. In *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), this court, in an en banc decision, rejected the challenges to the Reagan Tokes Law raised in this appeal.

{¶ 39} The fourth assignment of error is overruled.

## Convictions Supported by Sufficient Evidence and not Against the Manifest Weight of the Evidence

{¶ 40} In his fifth and sixth assignments of error, appellant contends that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence, respectively.

{¶ 41} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's conviction is supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 46 (10th Dist.).

> To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial.

*State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 42} Appellant was convicted of aggravated burglary under R.C. 2911.11(A), which provides:

No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]

R.C. 2911.11(A)(1).

{¶ 43} Appellant was convicted of burglary under R.C. 2911.12(A), which provides:

No person, by force, stealth, or deception, shall do any of the following: (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]

R.C. 2911.12(A)(1).

{¶ 44} The underlying criminal offenses for appellant's aggravated burglary and burglary convictions were domestic violence; he was convicted of three counts of domestic violence under R.C. 2919.25 relative to each of the three victims, I.B., L.B., and E.C. R.C. 2919.25 provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A).

{¶ 45} Appellant cites *State v. Brooks*, 2016-Ohio-489, 56 N.E.3d 357 (8th Dist.), as ground to vacate his aggravated burglary and burglary convictions. In *Brooks*, the defendants robbed the victim as they were exiting an apartment

complex. The burglary charges were reversed because the theft occurred outside the apartment building.

{¶ 46} This case is distinguishable from *Brooks*. Here, the testimony established that appellant was not allowed to be at I.B.'s and L.B.'s, his father and mother's house and despite that, he went there and broke into the house by forcing the door open. The door hit L.B., and appellant pushed her. Further, while inside the home, appellant hit I.B. and then ran after E.C., his half-brother, and proceeded to assault him. It is true that some of the assault between appellant and E.C. occurred outside the home, but still, appellant broke down the front door and exited the back door of the house to assault E.C.

{¶ 47} Further, I.B. specifically testified "[a]nd then he [appellant] broke down the door and he hit me in the hand. He [appellant] hit me in the hand." I.B. and E.C. sustained injuries from appellant's assault; the police photographed the injuries and the photographs were admitted into evidence. Unlike the defendants in *Brooks*, appellant did not simply wait outside the door until E.C., I.B. or L.B. exited before assaulting them. He broke into the house and began his assault in the house.

{¶ 48} In rendering its verdict, the court stated that after observing I.B. throughout the trial, it found his testimony "beyond a reasonable doubt convincing * * * not to mention the physical evidence; the photographs; the 9-1-1 call; and, of course, the body camera." Appellant continued to claim his innocence and that the hand photographed in exhibit No. 2 was his hand, not I.B.'s hand. The court stated,

"[l]et's just be clear that I did make a very thorough analysis of the evidence in this case, and I did review carefully the photographs.  * * * The photographs were identified by the victim [I.B.] as himself."  The court further noted "also, there's a separate piece of evidence, which is the body camera video, which shows very clearly the swollen hand of [I.B.] in this particular case." (Tr. 101.)

{¶ 49} In light of all the evidence, we cannot say that the trial court clearly lost its way in concluding that appellant broke into his parents' home and committed acts of domestic violence against I.B., L.B., and E.C.  Thus, appellant's convictions are not against the manifest weight of the evidence.  This resolution is also dispositive of appellant's claim that his convictions are not supported by sufficient evidence.

{¶ 50} The fifth and sixth assignments of error are overruled.

**Conclusion**

{¶ 51} The judgment of conviction is affirmed in part and vacated in part. The aggravated robbery, robbery, and domestic-violence convictions are affirmed. The trial court's imposition of five years mandatory postrelease control and a no-contact order are vacated.  Further, the trial court's imposition of prison terms on both the aggravated robbery and robbery counts is vacated.

{¶ 52} Upon remand, the trial court is ordered to impose postrelease control in accordance with R.C. 2967.28(B)(2); merge the aggravated robbery and robbery convictions and resentence appellant on the count under which the state elects to proceed; and issue a judgment of conviction in accordance with the appropriate

postrelease control, reflection of the merger and sentence, and without a no-contact order.

{¶ 53} Judgment affirmed in part, vacated in part; case remanded.

It is ordered that appellee and appellant equally share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

SEAN C. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR