GILMORE et al., Appellants,

v.

VILLAGE GREEN MANAGEMENT COMPANY et al., Appellees.

[Cite as *Gilmore v. Village Green Mgt. Co.*, 178 Ohio App.3d 294, 2008-Ohio-4566.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 90387 and 90418.

Decided Sept. 11, 2008.

Joseph W. Diemert Jr. & Associates Co., L.P.A., Joseph W. Diemert Jr., Thomas M. Hanculak, and Daniel A. Powell, for appellants Matthew Gilmore et al.

Kreiner & Peters Co., L.P.A., and Daran P. Kiefer; Weltman, Weinberg & Reis, and Ted M. Traut, for appellants General Casualty Company and Christopher Mears.

Alan I. Goodman, for appellants Amy and Buddy Dice.

Ulmer & Berne, L.L.P., and Lawrence D. Pollack, for appellees.

Shapero & Green, L.L.C., Brian Green, and Jennifer Stakes, for Allstate Insurance Company.

Keis George, L.L.P., Patrick O'Malley, and William H. Keis Jr., for State Farm Fire & Casualty Company.

JAMES J. SWEENEY, Administrative Judge.

{¶ 1} Plaintiffs-appellants, Matthew Gilmore, et al., appeal from a decision of the Cuyahoga County Court of Common Pleas, which partially granted defendants-appellees, Village Green Management Co., Village Green of Beachwood LP, and Village Green Residential Properties LTD's (collectively referred to as "the Village"), motion to exclude plaintiffs' expert witness's opinion that negligent construction in the Village Green apartments caused an electrical fault in the floor and ceiling space, which caused a fire to devastate the plaintiffs' apartments. Plaintiffs also ask us to reverse the trial court's grant of summary judgment to the Village as to all of plaintiffs' claims. For the following reasons, we find that the trial court erred in barring plaintiffs' expert witness's testimony and that the grant of summary judgment to the Village was therefore improper. We reverse and remand.

{¶ 2} A review of the record reveals the following: On February 2, 2004, at approximately 1:58 p.m., Beachwood firefighters were called to Building 3 of the Village Green of Beachwood apartment complex in Beachwood, Ohio, after a passerby noticed flames near the patio of a first-floor apartment moving up the side of the building. The fire progressed very rapidly through Building 3, destroying the wooden floor spaces and the roof. The Beachwood Fire Department extinguished the fire after approximately six hours. Although no one was injured, there was considerable property damage, and the following day, approximately one-third of Building 3 was demolished by a track hoe.

{¶ 3} Immediately following the fire, the Beachwood Fire and Police Departments began investigating the cause of the fire, including evaluating the scene, taking photographs, and talking to witnesses and residents. Ten days after the fire, the Beachwood Fire Department retained Ralph Dolence, a fire-investigation and electrical expert, to assist in their investigation.

{¶ 4} Following an extensive investigation, including an on-site investigation and analysis of the evidence obtained and collected, Dolence tendered a technical analysis report to the City of Beachwood Fire Department on May 21, 2004. In this report, Dolence concluded that the fire originated in the floor space below level 3 and the ceiling space above level 2 of Building 3. Although Dolence noted that "the exact fire cause and mode of failure will probably never be identified due to the destruction of the site and pertinent evidence," he nonetheless concluded, relying upon facts in evidence and the elimination of all other potential causes, that the cause of the fire was an electrical fault in the floor and ceiling

space between levels 2 and 3 of Building 3. Dolence was subsequently retained as an expert for the plaintiffs.

{¶ 5} The plaintiffs filed a complaint against the Village, alleging that the Village's negligent construction and/or maintenance of the building caused the February 2, 2004 fire. In support, they presented a preliminary report dated July 21, 2005, in which Dolence opined that the fire was electrical in nature and resulted from negligent construction of the building. Specifically, Dolence opined that missing wooden beams and negligent installation of the electrical feeder cables and wires caused the fire to occur and then rage out of control. Although Dolence identified other potential factors that could have contributed to the cause of the fire, including water deterioration and water infiltration, he nonetheless specifically concluded that "the only feasible ignition source in this ceiling and floor area was the electrical wiring and wiring devices and the wiring junction and splice points." Dolence again noted that "the total and devastating destruction of the section of the building where the fire originated makes it impossible for anyone to pinpoint the exact point and mode of failure."

{¶ 6} The Village moved to exclude Dolence's testimony pursuant to Evid.R. 702, arguing that his opinions were merely speculative and could not meet the standards for admissibility of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. The Village also moved for summary judgment, arguing that, if Dolence's testimony was excluded, plaintiffs cannot prove causation, a necessary element of their claims against the Village.

{¶ 7} A *Daubert* hearing was held on December 26 and 27, 2006, and January 8, 2007. At the hearing, Dolence testified that he followed the scientific method described in the National Fire Protection Association 921 Guidebook for Fire Investigations (hereinafter the "NFPA 921"), a multistep process that guides fire investigators through fire investigations using both inductive and deductive reasoning, in conducting his investigation. He testified that he conducted a physical examination of the site, collected evidence, formed a hypothesis, and then tested that hypothesis.

{¶ 8} Based on his investigation, Dolence determined that the cause of the fire was an electrical problem. Dolence testified that he came to this conclusion after carefully ruling out all other possibilities, such as arson, careless smoking, or furnace failure, and the Village's theory that the fire started on a patio of an apartment on the first floor.

{¶ 9} Having determined that the fire was electrical in nature, Dolence testified that he investigated the cause of the electrical fire. Although Dolence conceded that the exact fire cause could never be identified due to the total destruction of the building, he was still able to come to a conclusion, based upon a reasonable degree of scientific certainty, that the cause of the electrical fire was due to the

negligent construction of the building. Specifically, Dolence testified that (1) the open-web floor joist system used by the Village in constructing the building caused the fire to spread "totally [un]encumbered," (2) that the gusset plates used to hold the wood slats in place were not cut to fit the specific needs of the 2x4's, (3) multiple electric feeder cables were placed under a single staple, which violates applicable building codes, and (4) multiple electric feeder cables were installed against the metal gusset plates, which causes "resistance heating," leading to fires.

{¶ 10} On August 10, 2007, the trial court granted the Village's motion in limine in part and excluded Dolence's opinion that negligent construction caused the electrical fire. Specifically, the trial court held:

{¶ 11} "Defendant's motion in limine seeking to exclude Dolence's testimony is denied. Dolence's opinion that the fire was electrical in origin may be admitted. Mr. Dolence's next conclusion—that the electrical problem causing the fire was necessarily the result of sloppy construction practices in running and fixing the electrical wires through the flooring braces—goes too far. It is an inference based upon an earlier inference. Mr. Dolence first infers the electrical origin of the fire and then infers the electrical problem stemmed from defective construction. This is impermissible. Mr. Dolence may only testify to the fire being electrical in origin."

{¶ 12} The court further held that Dolence's opinion "that the fire was caused by specific defects in the electrical wiring similar to those found in unburned parts of the building is too speculative to be heard by the jury."

{¶ 13} The trial court also granted the Village's motion for summary judgment on the grounds that the plaintiffs could not demonstrate that any actions or inactions on the part of the Village were the proximate cause of the fire.

{¶ 14} It is from this judgment that plaintiffs appeal and raise two assignments of error for our review.

{¶ 15} "I. The trial court abused its discretion by granting, in part, appellees' motion to exclude the expert testimony of Ralph Dolence."

{¶ 16} In their first assignment of error, plaintiffs argue that the trial court erred in excluding the testimony of Ralph Dolence, their expert on the cause of the fire. As an initial matter, we note that the determination of the admissibility of expert testimony is within the discretion of the trial court and that such decisions will not be disturbed absent an abuse of discretion. *Valentine v. Conrad,* 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9.

{¶ 17} Evid.R. 702 provides:

{¶ 18} "A witness may testify as an expert if all of the following apply:

{¶ 19} "(A) The witness's testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 20} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 21} "(C) The witness's testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 22} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 23} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 24} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 25} Here, the credentials and experience of Dolence as an expert are not in dispute. Accordingly, the sole issue is whether his testimony is reliable under Evid.R. 702(C).

{¶ 26} In determining whether the opinion of an expert is reliable under Evid.R. 702(C), a trial court examines whether the expert's conclusion is based on scientifically valid principles and methods. *Valentine,* 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 16. In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611, 687 N.E.2d 735.

{¶ 27} A court should not focus on whether the expert opinion is correct or whether the testimony satisfies the proponent's burden of proof at trial. *Valentine,* ¶ 16. Moreover, evidence should not be excluded merely because it is questionable or confusing, since the experts' opinions would be subject to cross-examination and the credibility of their conclusions left to the trier of fact. *Miller v. Bike Athletic Co.* at 614, 687 N.E.2d 735; *State v. Nemeth* (1998), 82 Ohio St.3d 202, 211, 694 N.E.2d 1332.

{¶ 28} Here, Dolence noted that "the exact fire cause and mode of failure will probably never be identified due to the destruction of the site and pertinent

evidence." However, by employing the scientific method set forth in the NFPA 921, Dolence testified, with a reasonable degree of scientific certainty, that the cause of the fire was electrical in nature and that the cause of the electrical fire was the negligent construction of the floor joists and the placement of the electrical feeder cables between the floor and ceiling of the second and third floors.

{¶ 29} Dolence testified that he reached this conclusion by personally inspecting the fire site, examining the evidence, and speaking with numerous witnesses. He determined from the burn patterns that the fire originated in the floor space below Suite 311 and the ceiling space of Suite 211. He then made a determination as to the causes of the fire from this area of origin.

{¶ 30} By using the deductive reasoning cited in the NFPA 921, Dolence systemically eliminated other potential causes of the fire, such as arson, careless smoking, or furnace failure. It was through this method of deductive reasoning that Dolence concluded that the sole possible cause of the fire was electrical in nature, and that the cause of the electrical fire was due to negligent construction. Specifically, Dolence testified that (1) the open-web floor joist system used by the Village in constructing the building caused the fire to spread "totally [un]encumbered," (2) the gusset plates used to hold the wood slats in place were not cut to fit the specific needs of the 2x4's, (3) multiple electric feeder cables were placed under a single staple, which violates applicable building codes, and (4) multiple electric feeder cables were installed against the metal gusset plates, which causes "resistance heating" and leads to fires. While Dolence admitted that water deterioration and oxidation "could" have contributed to the problem, he still opined, with a reasonable degree of scientific certainty, that faulty installation of the wiring was the cause of the electrical fire.

{¶ 31} Contrary to the trial court's finding, we do not find that Dolence's conclusion that negligent construction caused the electrical fire was merely "speculative" or "an inference based upon an inference." His finding that the fire was electrical in nature is based on the scientific method established by the NFPA 921. Specifically, Dolence came to this conclusion based on his own observations, data collected, documents reviewed, witness accounts, and because he had ruled out all other possibilities.

{¶ 32} Similarly, his finding that the electrical fire was caused by faulty construction is also based on the scientific method established by the NFPA 921. His conclusion that the fire was caused by negligent construction is supported by facts independent of his determination that the fire was electrical; to wit: damaged cables, missing floor joists, exposed edges of the metal gusset plates, and multiple cables under one staple.

{¶ 33} While the Village provided its own experts, who opined that the fire started on a first-floor patio and was not due to an electrical fire, Dolence's opinion (as well as that of the Village's experts) would be subject to cross-examination. See *Miller v. Bike Athletic Co.,* 80 Ohio St.3d 607, 687 N.E.2d 735. The court's role as gatekeeper does not focus upon the conclusions that an expert draws. *Hertzfeld v. Hayward Pool Prods., Inc.,* Lucas App. No. L–07–1168, 2007-Ohio-7097, 2007 WL 4563446. When a competing expert points out weaknesses in the strength of an expert's conclusion, it does not turn the challenged expert's conclusion into the type of "subjective belief or unsupported speculation" that *Daubert* prohibits. Id. A challenged expert's testimony does not have to sustain, at the time of summary judgment, the offering party's burden of proof at trial. *Miller v. Bike Athletic Co.,* at 607, 687 N.E.2d 735.

{¶ 34} Assignment of Error I is sustained.

{¶ 35} "II. The trial court erred by granting appellees' motion for summary judgment as genuine issues of material fact exist and appellees are not entitled to judgment as a matter of law."

{¶ 36} The trial court granted summary judgment to the Village in the absence of some of Dolence's testimony, concluding that plaintiffs could not advance a material fact relevant to causation. It stated that "Plaintiffs have offered no evidence that Defendants' conduct in any way caused or contributed to cause the fire" because "Mr. Dolence's expert opinion as allowed by the Court indicates that he cannot say what precisely caused the electrical problem giving rise to the fire."

{¶ 37} An appellate court reviews a grant of summary judgment de novo, the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. Pursuant to Civ.R. 56, a trial court is required to construe the evidence in a light most favorable to the nonmoving party, determine whether any genuine issues of material fact exist, and determine whether reasonable minds could differ as to whether judgment should be entered against the nonmoving party. Civ.R. 56(C). An appellate court, reviewing a grant of summary judgment, also examines the record in the light most favorable to the party opposing the motion. *Engel v. Corrigan* (1983), 12 Ohio App.3d 34, 12 OBR 121, 465 N.E.2d 932.

{¶ 38} In the first assignment of error, we held that Ralph Dolence's testimony is relevant and reliable on the issue of causation; to wit: his opinion that negligent installation of electrical cables and negligent construction of floor joists caused the electrical fire in Building 3. Given that both parties offer competing expert testimony as to the cause of the fire that destroyed the plaintiffs' belongings, we find that summary judgment was improperly granted.

{¶ 39} Reversing summary judgment on the basis of the trial court's improper evidentiary ruling is proper because it affects the substantial rights of the adverse party. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 164–165, 17 O.O.3d 98, 407 N.E.2d 490. In its grant of summary judgment, the trial court explicitly relied on the fact that the plaintiffs had no expert witness to establish causation in order to conclude that they could not advance a genuine issue of fact. The prejudice to plaintiffs is clear.

{¶ 40} Assignment of error II is sustained.

{¶ 41} For the foregoing reasons, we reverse the trial court's judgment with respect to Ralph Dolence's testifying on the issue of causation. We also reverse the judgment granting summary judgment. We remand for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

McMONAGLE, J., concurs.

GALLAGHER, J., dissents.

GALLAGHER, Judge, dissenting.

{¶ 42} I respectfully dissent from the majority opinion. I would find that the trial court did not abuse its discretion when it performed its gatekeeping function under Evid.R. 702 and excluded portions of Dolence's testimony.

{¶ 43} The majority opinion sets forth the standard for determining whether an expert opinion is reliable under Evid.R. 702(C). In making this determination, the trial court has been given the role of gatekeeper. As stated in *Valentine v. Conrad,* 110 Ohio St.3d 42, 44, 850 N.E.2d 683, "Because even a qualified expert is capable of rendering scientifically unreliable testimony, it is imperative for a trial court, as gatekeeper, to examine the principles and methodology that underlie an expert's opinion."

{¶ 44} In this case, the trial court thoroughly reviewed the reliability analysis as set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469, and its progeny, under both Ohio and federal case law. See *Gen. Elec. Co. v. Joiner* (1997), 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508; *Kumho Tire Co. v. Carmichael* (1999), 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238; *Valentine, supra; State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038; *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735; *State v. Nemeth* (1998), 82 Ohio St.3d 202, 694 N.E.2d 1332. It then considered Dolence's testimony and determined that his conclusion that the fire was electrical in nature was the product of reliable principles and methods as

established by NFPA 921. However, the trial court determined that Dolence's conclusion that the specific cause of the electrical fire stemmed from defective construction was too speculative. This determination was supported by the record.

{¶ 45} In the technical analysis report dated May 21, 2004, which Dolence provided to the City of Beachwood Fire Department, Dolence concluded that the fire originated between the ceiling space above Suite 211 and the floor space below Suite 311 and that the most probable cause was an electrical fault, failure, or malfunction. In reaching this conclusion, Dolence relied upon facts in evidence and then eliminated all other potential causes for the fire. However, Dolence was unable to state the specific cause of the electrical fire and opined that "the exact cause and mode of failure will probably never be identified due to the destruction of the site and pertinent evidence." In a preliminary report dated July 21, 2005, Dolence identified other factors that could have contributed to the cause of the fire, including water deterioration to electrical wiring insulation and water infiltration into junction boxes and wiring device splices. He again stated that "the exact fire cause and mode of failure will never be identified." He then testified at the hearing that it was his opinion that the fire was caused by some type of resistance heating with the wiring system. Significantly, he conceded that the source could be "the actual wiring itself," which could have had a problem or defect with it. He then stated that he did not know what type of connection it was or what type of electrical resistance heating it was. He stated: "It could have been a poor termination based on oxidation. It could have been a damaged wire that heated. There are several scenarios based on the condition of the wiring and the wiring method that I saw that it could have been." Indeed, Dolence was able to identify a number of possible factors that could have been the proximate cause of the fire, but he was unable to do anything more than speculate as to the specific cause of the fire.

{¶ 46} Ohio courts have found that a trial court does not abuse its discretion in excluding expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered." Id., citing *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146, 118 S.Ct. 512, 139 L.Ed.2d 508. In this case, it was in the province of the trial court's role as gatekeeper, upon finding the testimony unreliable, to exclude any testimony by Dolence that the electrical problem stemmed from defective construction. The record supports a conclusion that there was too great a gap between the data and the expert's proffered opinion and that his conclusion was speculative. I do not find any abuse of discretion with respect to the trial court's determination.

{¶ 47} I also believe that the trial court properly granted summary judgment to appellees because appellants failed to offer evidence that appellees' conduct in

any way caused or contributed to cause the fire. Accordingly, I believe the trial court's judgment should be affirmed.