# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106450**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# RANAU D. JOHNSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; VACATED IN PART;
REVERSED IN PART; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-613109-A

**BEFORE:** S. Gallagher, P.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:** September 13, 2018

[Cite as *State v. Johnson*, 2018-Ohio-3670.]
**ATTORNEY FOR APPELLANT**

Donald Butler
Donald Butler & Associates
75 Public Square, Suite 600
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Kelly Needham
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, P.J.:

{¶1} Appellant Ranau D. Johnson appeals his convictions and sentence. Upon review, we affirm all the convictions for aggravated arson and the sentence imposed on Counts 3 and 4, vacate as void the conviction and sentence on Count 1 for attempted felony murder, reverse the award of restitution, and remand the case to the trial court for a resentencing hearing on Count 2 only and for an evidentiary hearing to determine the appropriate amount of restitution.

{¶2} Appellant was charged under a four-count indictment. Count 1 charged appellant with attempted murder, a felony of the first degree, in violation of R.C. 2923.02 and 2903.02(B). Counts 2 and 3 charged appellant with aggravated arson, felonies of the first degree, in violation of R.C. 2909.02(A)(1), with each count pertaining to a separate victim. Count 4 charged appellant with aggravated arson, a felony of the second degree, in violation of R.C. 2909.02(A)(2). Appellant entered a plea of not guilty, and the case proceeded to a bench trial.

{¶3} The trial court found appellant guilty on all four counts as charged. Following merger of Counts 1 and 2, the court sentenced appellant to a prison term of 10 years for Count 1, 10 years for Count 3, and 7 years for Count 4, with all terms ordered to run consecutive for a total aggregate prison term of 27 years. The court also ordered appellant to pay restitution to S.A. in the amount of $5,000.

{¶4} As an initial matter, although not raised by appellant, we must vacate appellant's conviction and sentence on Count 1 for attempted felony murder on the

authority of *State v. Nolan*, 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016. *See State v. Brooks*, 2016-Ohio-489, 56 N.E.3d 357, ¶ 27 (8th Dist.) (sua sponte vacating conviction for attempted felony murder on the authority of *Nolan*).

{¶5} On Count 1, appellant was convicted of attempted felony murder in violation of R.C. 2923.02 and 2903.02(B). In *Nolan*, the Supreme Court of Ohio held that attempted felony murder in violation of R.C. 2923.02 and 2903.02(B) is not a cognizable crime under Ohio law because it is impossible to commit. *Id*. at ¶ 5-10. The court recognized that an attempt crime must be committed purposely or knowingly, but that intent to kill need not be proven for a felony-murder conviction under R.C. 2903.02(B) because it is essentially a strict-liability crime so that a person can be convicted even though the death was unintended. *Id*. at ¶ 8-10.

{¶6} Because attempted felony murder charged under R.C. 2903.02(B) is not a cognizable crime in Ohio, appellant's conviction on Count 1 is void and his conviction and sentence on that count must be vacated. *See State v. Bozek*, 11th Dist. Portage No. 2015-P-0018, 2016-Ohio-1305, ¶ 21; *Brooks* at ¶ 27. However, because appellant's conviction for aggravated arson under Count 2 was merged with the attempted murder conviction for sentencing, we must remand for resentencing on Count 2. *See State v. Baker*, 2d Dist. Greene No. 2017-CA-55, 2018-Ohio-1865, ¶ 22 (recognizing court has the authority to resentence on a merged count). As stated in *Baker*, "Where offenses are merged for sentencing and the conviction for the offense upon which the defendant was sentenced is vacated, the trial court must resentence the defendant on the offense that was

merged with the vacated offense, again merging any offenses as appropriate." *Id*.; *see also State v. Harwell*, 2d Dist. Montgomery No. 25852, 2015-Ohio-2966, ¶ 35 (remanding for resentencing on counts that merged with attempted felony murder).

{¶7} We shall proceed to address the challenges raised herein as they pertain to the aggravated arson counts. The underlying facts are as follows.

{¶8} At trial, S.A. testified that she had been in a relationship with appellant from March 2016 until December 31, 2016. The two did not live together. At the time of the fire, S.A. had been residing at her uncle's home for approximately three weeks. Her bedroom was located in the basement. Appellant had helped S.A. move into her uncle's home; he came over almost daily, and he knew where her bedroom was located.

{¶9} According to S.A., she and appellant had a falling-out on New Year's Eve. Two days later, appellant came to S.A.'s home and tried to explain that he was not cheating on S.A. with an ex-girlfriend.

{¶10} S.A. testified that on January 3, 2016, she sent appellant a text message indicating she wanted to end their relationship. Appellant responded to S.A. with a text threatening to set her car on fire. After the conversation, appellant began parking her car inside the garage.

{¶11} S.A. testified that on January 4, 2016, before midnight, she was in the basement lying in her bed, using her tablet and her phone. S.A. confirmed that she took medication and was normally sleeping by 10:00 p.m. at night. However, she had not taken her sleep aid on the night of the fire because she was on a fast.

{¶12} S.A. testified that she heard a window break, and a piece of the glass fell onto her bed. She then saw liquid that smelled like gasoline being poured in through the window. She was able to see the opening and the handle along the top of a Hawaiian Punch container pouring the liquid. She testified that she recognized the bottle as the same bottle in which appellant kept gasoline. S.A. also stated she could see appellant's hand "through the slit" and that she recognized a bump on his finger.

{¶13} S.A. testified that she noticed the gasoline coming down the wall and saw the bottle being shaken. The gasoline splashed onto a blanket, which was covering S.A. in the bed. S.A. jumped out of bed and ran to the doorway. When she turned around, she saw flames coming down the wall, traveling onto the floor, and over to her bed.

{¶14} S.A. testified that she ran upstairs and out the front door. She yelled for her uncle to call the police. When she got outside, she saw appellant's car parked in the driveway next to the house. She described his car and identified the vehicle in a photograph introduced at trial. She testified that she saw appellant walking to the car and that he was wearing a brown hoodie and some blue jeans. She indicated that when she called appellant's name, he turned around and gave her "a crooked grin." According to S.A., appellant had the Hawaiian Punch container in his hand and put it in the backseat of his car. He then drove away. S.A. and her uncle attempted to put the fire out with pails of water, but were unsuccessful.

{¶15} S.A.'s uncle, K.P., testified that he also heard the window break. After checking a few windows in his home, he looked outside and saw appellant walking to his

car. He provided a description of what appellant was wearing. K.P. testified he called to S.A., who answered "there's a fire." She and K.P. were unable to put the fire out. K.P. testified that he spoke to the police and a fire detective and provided a statement. He indicated that he was unable to write the statement himself because of a physical impairment. The record reflects that S.A. scripted the statement for her uncle in the presence of Detective Richard Mizikar. K.P. testified that he signed the statement and the statement was true. Neither S.A. nor K.P. were injured by the fire.

{¶16} The Cleveland police department, the Cleveland fire department, and EMS responded to the scene. Officer Geoffrey Walter arrived at the scene and learned the name of the suspect, a description of his vehicle, and the address where appellant was residing, which was appellant's grandmother's home. Officer Walter and his partner went to the address. They found appellant sitting in his vehicle, which was located parked in the driveway, and arrested appellant. Officer Walter observed that appellant appeared intoxicated. No gasoline containers or other incriminating evidence was found in the vehicle. No odor of gasoline was detected. Appellant repeatedly denied any involvement with the fire.

{¶17} Battalion Chief William Gorey III testified that when he arrived at the scene of the fire, he observed smoke coming from a basement window. He stated that when he opened a side door, "the smoke was already billowing out from the basement out the side door at me." He testified to observing "black smoke" and the dangers it poses to people. He discussed the steps taken to put out the fire. He stated that it took ten minutes to put

out the fire, that there then remained a "significant amount of smoke" in the home, and that they had to look for "hot spots." He testified to the risks involved and to the fire damage to the home. He indicated that the origin of the fire was "at the window, down the wall and in the window" and further stated "by the fact that the black smoke was was [sic] majority coming out that window and white smoke coming out the door on the side, the obvious ignition * * * the seat was at that window area of the bedroom downstairs." He testified he was aware an accelerant was used and assumed it to be gasoline. Chief Gorey also testified that when he arrived at the scene, S.A. almost immediately stated, "I can't believe that my ex-boyfriend lit this house on fire. Through the window he poured gasoline on me."

{¶18} Detective Richard Mizikar testified to the fire investigation. He testified to his training and experience as a firefighter in the fire investigation unit. Upon arriving at the scene of the fire, he was informed by Chief Gorey that there was a possible suspect and that the fire was reported to have been started by dispensing gasoline through the basement window. Det. Mizikar walked around the structure and took photographs. He testified to two specific burn patterns in the basement, one directly below the window and the other off to the right-hand side where the bed was situated. He indicated there was a "V pattern" associated with both of them, which helps determine where the point of origin or source of the fire may have started. He stated that "[b]ecause the V pattern under the window doesn't descend all the way to the floor, the fire had started a little

higher," that the V pattern started where there was an accelerant, and that the fire communicated to the bed and started to grow up the other wall.

{¶19} Detective Mizikar testified that in the fire investigation, he used a "photoionizer detector" ("PID"), which is an instrument used "to detect the presence of hydrocarbons, which are flammable vapors." He obtained readings indicative of flammable vapors located in the area of the window frame outside the home, on the windowsill inside the basement, and at the believed point of origin at the bottom of the V pattern under the window, which gave a reading consistent with a lot of flammable vapor indicative of an accelerant having been used. Upon his investigation, Det. Mizikar determined that the fire was intentionally started with an open flame and that the point of origin was "in the vent window in the glass block."

{¶20} Det. Mizikar testified that after conducting the fire investigation at the home, he went to the address where appellant was being detained. He used the PID around appellant's hands and feet but received no significant reading. He also stated that it is not difficult to wash accelerant off your hands with soap and water. Det. Mizikar further testified that the description given of appellant had him wearing a brown sweatshirt, but that appellant was wearing a gray sweatshirt at the time Mizikar saw him. He estimated 40 to 45 minutes had passed between the time he arrived at the scene of the fire and the time of appellant's arrest.

{¶21} The PID monitor was not used inside of appellant's vehicle. Det. Mizikar was unaware of the Hawaiian Punch container and did not know to look for the same

because S.A. had not informed him of this detail or of the container having been thrown into the backseat of appellant's vehicle. On cross-examination, Det. Mizikar testified that the PID is accurate and that with his training and experience he had calibrated the instrument correctly. Defense counsel's questioning reflected that counsel was aware that the PID is a highly accurate instrument. Counsel acknowledged the detective's testimony that he had cleaned the instrument with fresh air before deploying the instrument again.

{¶22} Defense counsel made a Crim.R. 29 motion for acquittal that was denied by the trial court. The defense called four witnesses, including appellant's cousin, who testified as an alibi witness. Appellant's cousin testified that when he arrived at his grandmother's home at 10:20 p.m., appellant was outside, sitting in his car, and that they went to get something to eat and then returned. The cousin conceded he never informed the police of this.

{¶23} The 911 call reporting the fire was placed at 10:36 p.m. Cell phone records placed appellant's phone near the victims' residence at the time of the incident.

{¶24} The trial court convicted appellant of all counts as charged and sentenced appellant. Appellant timely filed this appeal. He raises four assignments of error for our review.

{¶25} Under his first assignment of error, appellant claims his convictions were against the manifest weight of the evidence. Relevant hereto, appellant was convicted of aggravated arson under R.C. 2909.02(A)(1) and (2), which provide as follows:

(A) No person, by means of fire or explosion, shall knowingly do any of the following:

(1) Create a substantial risk of serious physical harm to any person other than the offender;

(2) Cause physical harm to any occupied structure[.]

**{¶26}** When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶27}** Appellant first argues that the testimony of S.A. and K.P. was not credible. Appellant claims that the testimony of S.A. was incredible because she told the police right away that her ex-boyfriend started the fire and she omitted telling the police about the Hawaiian Punch container, the bump on appellant's finger, and whether she saw appellant strike the match that started the fire. Our review reflects that S.A. provided a credible account of what occurred that was consistent with other testimony and evidence in the case. She was aptly cross-examined concerning the stated omissions. She testified that she did tell the police she saw a bottle and that she did not report the specific

detail of it being a Hawaiian Punch bottle because she believed it was a small detail in a big picture.

{¶28} Appellant also claims that K.P.'s statement was a sham and questions the credibility of K.P.'s testimony. Appellant further claims there were contradictions in the testimony of Det. Mizikar and Chief Gorey.

{¶29} Although appellant attacks the credibility of the state's witnesses and focuses on discrepencies in the testimony, he ignores the other evidence offered that corroborated S.A.'s detailed account of the incident. S.A.'s testimony was corroborated by K.P.'s testimony, and the testimony of Det. Mizikar and Chief Gorey. K.P. testified to seeing appellant walking to his vehicle and provided a description of what he was wearing. Also, the fire investigation determined the fire's point of origin was at, or around, the basement window. While appellant attempted to establish an alibi at the time of the incident, the police were never informed of an alibi and cell phone records placed appellant's phone near the scene of the crime at the relevant time frame.

{¶30} The evidence in this case established that appellant, by means of fire, (1) knowingly created a substantial risk of serious physical harm to the victims, and (2) caused physical harm to an occupied structure. Upon our review, we are unable to find the trier of fact clearly lost its way. Moreover, this is not the exceptional case in which the evidence weighs heavily against the conviction. Appellant's first assignment of error is overruled.

{¶31} Under his second assignment of error, appellant argues his convictions for aggravated arson under R.C. 2909.02(A)(1) were based upon insufficient evidence.

{¶32} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *Thompkins*, 78 Ohio St.3d at 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶33} With regard to the challenged counts, appellant was convicted of aggravated arson in violation of R.C. 2909.02(A)(1), which states that "[n]o person, by means of fire * * *, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]"

{¶34} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). In cases involving aggravated arson, it has been found that

> [t]he "knowingly" element in an aggravated arson case refers to a
> defendant's state of mind when he set a fire — i.e. the defendant is aware
> that the fire or explosion he set will probably create a substantial risk of

serious physical harm. The requisite proof is not dependant [sic] upon the actual result of the fire but is based upon the risk of harm created by the defendant's actions.

*State v. Pfeiffer*, 3d Dist. Seneca No. 13-15-22, 2015-Ohio-4312, ¶ 46.

**{¶35}** A "substantial risk" is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." "Serious physical harm to persons" is defined as any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶36}** Appellant claims that the state failed to demonstrate that S.A. or K.P. were exposed to a "substantial risk" of "serious physical harm." Appellant argues that neither victim sustained any injury and that they both felt comfortable enough to return to the

basement to attempt to extinguish the fire.  He also argues that the firefighters put the fire out in ten minutes and none were injured.

{¶37} Our review reflects that evidence was presented to show appellant intentionally set fire to an occupied home with the use of an accelerant he poured in through the basement window.  There was evidence that appellant shook the bottle and that some of the accelerant splashed onto the blanket covering S.A.  S.A., who normally would be asleep at the time, was awake and managed to escape the home with her uncle and call 911.  The fire department quickly responded to the scene and extinguished the fire.  There was testimony of "black smoke" coming out of the basement window and that there was "heavy smoke where you couldn't get down to the basement without a SCBA breathing apparatus on you."  Chief Gorey testified to the dangers of black smoke, the risks presented by the fire, and the damage to the home.   There was testimony that the firefighters had to break out some windows, that the fire had burned through the mattress by the window and impinged on an electrical box, that there was visible soot and staining damage, and that personal items were destroyed.

{¶38} Our review reflects that testimony was presented to establish appellant knew that a fire was going to result from his actions and that this fire would create a substantial risk of serious physical harm to the persons inside the home.  After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of aggravated arson beyond a reasonable doubt. Appellant's second assignment of error is overruled.

{¶39} Under his third assignment of error, appellant challenges his conviction for attempted felony murder and claims the state failed to establish that he attempted to cause S.A.'s death as a proximate result of aggravated arson. Because we have already determined appellant's conviction for attempted felony murder is void, the third assignment of error is moot.

{¶40} Under his fourth assignment of error, appellant argues that the fire investigation conducted by Det. Mizikar produced manifestly unreliable results. Appellant argues that Det. Mizikar was not qualified as an expert arson investigator under Evid.R. 702(B) and that his opinion as to the cause of the fire was not reliable "because it was not based on any scientifically valid principles and methods[.]"

{¶41} Pursuant to Evid.R. 702, a witness may testify as an expert if (1) "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons"; (2) "the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony"; and (3) "[t]he witness' testimony is based on reliable scientific, technical, or other specialized information." A trial court's admission of expert testimony is reviewed for an abuse of discretion. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 161.

{¶42} In this case, Det. Mizikar's expert testimony was based upon his knowledge and experience in fire investigations and his examination of the scene of the fire. Det.

Mizikar testified that he was first a police officer and then went through the fire academy and an apprenticeship of the fire department. Although Det. Mizikar did not have specialized training or education in arson investigation, he testified that he had 17 and one-half years of experience with the fire department and had been in the fire investigation unit since 2007, during which he had "probably investigated in the area of 1,000 fires." The record reflects that Det. Mizikar was qualified to testify as an expert in this matter.

{¶43} Insofar as appellant challenges the reliability of Det. Mizikar's conclusions and claims they were not based on scientifically valid principles and methods, the record reflects that no objection was raised at trial. Because no objection was raised at trial with regard to Det. Mizikar's testimony, appellant has forfeited all but plain error. Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 2001-Ohio-1290, 752 N.E.2d 904, citing *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). A reviewing court must recognize plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶44} In determining whether an expert's opinions are reliable under Evid.R. 702(C), the court's focus is on whether the principles and methods the expert employed to

reach his opinions are reliable, rather than whether the conclusions are correct. *State Farm Fire & Cas. Co. v. Holland*, 12th Dist. Madison No. CA2007-08-025, 2008-Ohio-4436, ¶ 21, citing *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 611, 1998-Ohio-178, 687 N.E.2d 735. Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." "[W]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *State v. Solomon*, 59 Ohio St.3d 124, 126, 570 N.E.2d 1118 (1991).

**{¶45}** Here, the record reflects that Det. Mizikar interviewed the witnesses and physically examined the site of the fire and the burn patterns. He utilized his PID device, the accuracy of which was conceded, and determined that an accelerant had been used. He determined from the facts and data perceived by him that the fire had been intentionally started and that the point of origin was "in the vent window in the glass block." We conclude that the trial court did not abuse its discretion by permitting Det. Mizikar to testify as an expert as to the cause and origin of the fire.

**{¶46}** Also, we are not persuaded by appellant's comparison to *Gilmore v. Village Green Mgt. Co.*, 178 Ohio App.3d 294, 2008-Ohio-4566, 897 N.E.2d 1142 (8th Dist.), and to *Sanders v. Nationwide Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 99954, 2014-Ohio-2386. Further, even if an error had occurred, it cannot be said that but for the

error, the outcome of the trial would clearly have been otherwise in light of the other testimony and evidence in this case.   Appellant's fourth assignment of error is overruled.

{¶47} Under his fifth assignment of error, appellant challenges the imposition of consecutive sentences.   Because the sentence on Count 1 is vacated, we shall review this count only as to the   consecutive sentences imposed on Counts 3 and 4.

{¶48} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2).   *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16.   Pursuant to R.C. 2953.08(G)(2), a reviewing court may overturn the imposition of consecutive sentences only if it clearly and convincingly finds that either (1) "the record does not support the sentencing   court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶49} Before a trial court may impose consecutive sentences, the court must first make specific findings mandated by R.C. 2929.14(C)(4) and incorporate those findings in the sentencing entry.   *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.   The trial court is not required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language.   *Id.*   Further, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld."   *Id*. at ¶ 29.

{¶50} The record reflects that the trial court stated the following when imposing the consecutive sentences:

The Court finds pursuant to Ohio Revised Code Section 2929.14(C)(4) that the defendant is required to serve these prison sentences consecutively because a consecutive sentence is necessary to protect the public from future crime and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

Furthermore, this sentence is necessary because the defendant committed the offenses resulting in the near death of two people and destruction of a home with the use of accelerant poured into the window of one of the victims' rooms, which could have resulted in her incineration due to the structure of the basement of the home, harm so severe that a single prison sentence for the offenses would not adequately reflect the seriousness of the crime.

{¶51} Here, there is no dispute that the trial court made the requisite findings under R.C. 2929.14(C)(4) for the imposition consecutive sentences and incorporated those findings in the sentencing entry. Appellant claims that the record does not support the trial court's justification for imposing consecutive sentences and claims that the statements of "near death of two people" and "destruction of a home" are not supported by the record. Appellant also challenges the court's speculation as to what "could have resulted" as being unsupported by the record.

{¶52} Our review is not limited to the remarks made by the trial court at the time of imposing consecutive sentences. Rather, support for the trial court's findings may appear anywhere in the record. *State v. Gatewood*, 8th Dist. Cuyahoga No. 101271,

2015-Ohio-1288, ¶ 13, citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 11 (8th Dist.). As previously recognized, "R.C. 2929.14(E)(4) is satisfied when we can glean from the tenor of the trial court's comments, its findings, and the evidence that imposition of consecutive sentences is justified." *State v. Kessler*, 8th Dist. Cuyahoga No. 82956, 2003-Ohio-6052, ¶ 14.

**{¶53}** Upon our review of the entire record, we conclude that the tenor of the trial court's comments, its findings, and the evidence were sufficient to impose consecutive sentences. While neither victim died and the home was not completely destroyed, there was testimony showing that appellant intentionally set fire to a home in which the two victims resided, one of whom was located in the basement of the home. There also was testimony showing the fire and smoke damage caused to the property and the loss of personal belongings. After careful review of the record, we cannot clearly and convincingly find that the record does not support the trial court's findings. Appellant's fifth assignment of error is overruled.

**{¶54}** Under his sixth assignment of error, appellant claims the trial court erred by ordering him to pay $5,000 in restitution. He argues that there was a lack of any competent, credible evidence of economic loss to S.A.

**{¶55}** R.C. 2929.18(A)(1) limits the amount of restitution to the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. The statute allows the court to base the amount of restitution it orders to "*an amount recommended by the victim*, the offender, a presentence investigation report,

estimates or receipts indicating the cost of repairing or replacing property, *and other information*." (Emphasis added.) *Id.* "The amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Gears*, 135 Ohio App.3d 297, 300, 733 N.E.2d 683 (6th Dist.1999). "Although the decision to impose restitution is discretionary with the court, its determination of the amount of loss is a factual question that we review under the competent, credible evidence standard." *State v. Walls*, 8th Dist. Cuyahoga No. 100801, 2014-Ohio-3502, ¶ 2, citing *State v. Warner*, 55 Ohio St.3d 31, 69, 564 N.E.2d 18 (1990); *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, 877 N.E.2d 725, ¶ 20 (3d Dist.).

**{¶56}** S.A. testified that all of her personal items were in the basement of the home. Her personal items included clothes, shoes, hygiene products, medical equipment, her phone, and two tablets. Although she did not have any receipts, she represented that she had lost her file cabinet in the fire. S.A. testified that she was able to replace some of the items after the fire through the Red Cross, which gave her a voucher for clothing that she had to split with her uncle. She also was able to replace her phone, but was not able to get a new tablet. She testified that the situation was a big loss for her. Her victim impact statement included a claim of $5,000 of damaged personal property. However, there was a lack of evidence presented to support this figure.

**{¶57}** Although the record indicates that S.A. suffered an economic loss, we do not find that the state presented sufficient evidence from which the trial court was able to

discern the appropriate amount of restitution to a reasonable degree of certainty. Upon review, we find the restitution imposed by the trial court was arbitrary and that the amount of $5,000 was not supported by competent, credible evidence in the record. The judgment on restitution is reversed, and the matter is remanded to the trial court for the purpose of holding an evidentiary hearing to determine the appropriate amount of restitution owed to S.A. Appellant's sixth assignment of error is sustained.

{¶58} In conclusion, we affirm all the convictions for aggravated arson and the sentences imposed on Counts 3 and 4, vacate the conviction and sentence on Count 1 for attempted felony murder, reverse the award of restitution, and remand the case to the trial court for a resentencing hearing on Count 2 only and for an evidentiary hearing to determine the appropriate amount of restitution.

{¶59} Judgment affirmed in part; vacated in part; reversed in part; and case remanded.

It is ordered that appellant and appellee share costs herein taxed. The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR